UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  2:11-cr-0210 DAD DB P |
| Respondent, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| VERA KUZMENKO, | |
| Movant. | |

Movant is a federal prisoner proceeding without counsel with a motion to vacate, set aside, or correct her 2015 sentence pursuant to 28 U.S.C. § 2255.  The motion is fully briefed.

As discussed below, the § 2255 motion should be denied.

**Procedural History**

Movant was indicted by a federal grand jury on May 12, 2011.  (ECF No. 14.)  On November 3, 2011, a federal grand jury returned a superseding indictment against movant and nine other individuals, charging movant with wire fraud, mail fraud, money laundering, and witness tampering.  (ECF No. 123.)

Jury trial commenced on November 2, 2015, before U.S. District Judge John A. Mendez, and lasted five weeks.  (ECF No. 656, 713.)  Over 60 witnesses testified.

On December 4, 2015, movant was convicted of multiple counts of wire fraud, three counts of mail fraud, one count of money laundering and one count of witness tampering.  (ECF

Nos. 713, 720.)  She was acquitted of two counts of money laundering.  (Id.)  On March 15, 2016,

movant was sentenced to 168 months in federal prison.  (ECF No. 806 at 3; ECF No. 1130-2

Reporter's Transcript ("RT") of Judgment & Sentencing ("J&S") Hearing.)

On March 22, 2016, movant filed an appeal.  (ECF No. 813.)  On June 5, 2019, the

conviction was affirmed.  United States v. Kuzmenko, 777 F. App'x 186, 189 (9th Cir. 2019).

(ECF Nos. 969, 970.)

Movant sought compassionate release from the Bureau of Prisons, which was denied in

2017.  (ECF No. 1038-1 at 8-9.)  On October 2, 2020, movant filed a motion for compassionate

release.  (ECF No. 1030.)  The district court denied the motion on November 2, 2020.  (ECF No.

1043.)  Movant sought reconsideration, which was denied.  (ECF Nos. 1044, 1049.)  Movant filed

an appeal, and the Court of Appeals for the Ninth Circuit affirmed the denial of her motion for

compassionate release.  (ECF Nos. 1047, 1145.)

On October 16, 2020, the district court granted movant's request for extension of time to

file a § 2255 motion on or before February 4, 2021, but noted that

> [b]y setting this deadline, the Court makes no finding or
> representation that a subsequently-filed § 2255 motion is not subject
> to dismissal as untimely.  See Sossa v. Diaz, 729 F.3d 1225, 1231-35
> (9th Cir. 2015); see also Fermin v. United States, 859 F.Supp.2d 590,
> 597 (S.D.N.Y. 2012) (the beginning of the § 2255 limitations period
> may be delayed if certain circumstances beyond the petitioner's
> control prevent him from raising the claim earlier). Defendant is
> advised that a one-year statute of limitations is applicable to all
> claims presented in a motion pursuant to U.S.C. § 2255. See U.S.C.
> § 2255(f).

(ECF No. 1037.)

Movant filed the motion to vacate, set aside or correct sentence on January 28, 2021.

(ECF No. 1070.)  The government filed an opposition to the motion.  (ECF No. 1130.)  After

being granted an extension of time, movant filed a reply on October 7, 2021.  (ECF No. 1148.)

**Facts**

Movant held a leadership role in a large mortgage fraud scheme in Sacramento, from 2006

to 2008, involving over 25 charged individuals and others who were not charged.  (ECF No. 789

(Presentence Report ("PSR") ¶¶ 2-29, 45.)  Movant recruited straw buyers to purchase homes at

inflated prices so that movant and her co-defendants could drain money from escrows and pocket large commissions.  (Id. at ¶¶ 16-20, 28.)  The scheme involved at least 38 property transactions, resulting in over $30 million in loans obtained by fraud, and movant caused over $16 million in loss.  (Id. at ¶ 21.)  The scheme included wire fraud, mail fraud, and money laundering.  Movant also taught at least one other person (charged elsewhere) how to create a mortgage fraud group.  (Id. at ¶ 29.)

In addition, movant tampered with witnesses by instructing straw buyers to lie to the FBI and claim that Miraslava Chekin, a deceased witness, had prepared the fraudulent loan papers.  (Id. at ¶¶ 25-27.)

**Standards**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).  Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice. . . ."  Davis v. United States, 417 U.S. 333, 346 (1974).

Pending Claims

Movant claims she suffered ineffective assistance of counsel based on defense counsel's failure to:  (1) investigate and object to the loss amount or that movant was held responsible for losses associated with properties for which she was not charged or convicted; (2) request an evidentiary hearing; (3) offer evidence of state of the mortgage industry; (4) investigate "legal discovery documents," detect misidentifications, and challenge the government's introduction of false evidence pattern; (5) determine whether the government used perjured testimony; (6) argue that the alleged crime did not meet elements of existing banking law statute and that the government wrongfully identified movant as the loan originator; (7) demonstrate movant's minor role in crime and to object to government's theory that movant had a larger role, and raise the

1  issue of reasonableness in sentencing; (8) argue that all 23 counts of mail fraud were in the course

2  of one continuing action with First Franklin Financial (hereafter "First Franklin"); (9)

3  demonstrate that the government did not establish that First Franklin is an FDIC insured victim;

4  and (10) object to the money laundering charge.[1]  (ECF No. 1070.)

5  **Standards Governing Ineffective Assistance of Counsel Claims**

6  To prevail on a claim of ineffective assistance of counsel, a movant must show that her

7  trial counsel's performance "fell below an objective standard of reasonableness" and that "there is

8  a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9  would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

10  Under the first prong of the Strickland test, a movant must show that counsel's conduct

11  failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a

12  'strong presumption' that counsel's representation was within the 'wide range' of reasonable

13  professional assistance."  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466

14  U.S. at 689).  Petitioner must rebut this presumption by demonstrating that counsel's performance

15  was unreasonable under prevailing professional norms and was not the product of "sound trial

16  strategy."  Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's performance is

17  "highly deferential," and thus the court must evaluate counsel's conduct from counsel's

18  perspective at the time it occurred, without the benefit of hindsight.  Id. at 689.  "[S]trategic

19  choices made after thorough investigation of law and facts relevant to plausible options are

20  virtually unchallengeable."  Strickland, 466 U.S. at 690.

21  The second prong of the Strickland test requires a movant to show that counsel's conduct

22  prejudiced movant.  Strickland, 466 U.S. at 691-92.  Prejudice is found where "there is a

23  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

24  would have been different."  Id. at 694.  A reasonable probability is one "sufficient to undermine

25  confidence in the outcome."  Id. at 693.  "This does not require a showing that counsel's actions

26  'more likely than not altered the outcome,' but the difference between Strickland's prejudice

27

28  [1]  Movant includes a claim 11, purportedly reserving her right to supplement the motion with additional issues and arguments.  (ECF No. 1070 at 21.)

standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693).  "The likelihood of a different result must be substantial, not just conceivable."  Id.

### First Claim

In her first claim, movant alleges counsel was ineffective for failing to investigate and object to the calculation of the loss amounts, but then contends she is "objecting to the loss amount all together, because [First Franklin] never provided 'proof of claim' or 'victim impact statement.'"  (ECF No. 1070 at 5.)  She also contends she cannot be held liable for uncharged fraud pertaining to other banks.  (Id. at 5; ECF No. 1148 at 1, 9-12.)  Further, she contends defense counsel failed to seek a split sentence.  (ECF No. 1070 at 4.)

Respondent counters that movant may not challenge the loss calculation because she raised it on appeal and the claim was rejected; her allegation of ineffective assistance of counsel in connection with such claim fails because defense counsel raised many of the same arguments movant raises here; the district court used the proper two-step process to calculate the loss; and her allegation that she was held responsible for losses associated with properties for which she was not charged or convicted also fails because she was held accountable for losses associated with properties set forth in the superseding indictment and part of the scheme she was found guilty of organizing and leading.  (ECF No. 1130 at 22-26.)

### Loss Amount Challenge Barred

On appeal, the Ninth Circuit found the district court correctly calculated the loss amounts and rejected movant's claim that there was insufficient evidence to support the loss amounts. Kuzmenko, 777 F. App'x at 188-89.  Movant's attempt to again challenge the calculation of the loss amount is unavailing because it was already raised and decided on appeal.  "The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion."  Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972); see United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000)  ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.").

1

### Ineffective Assistance of Counsel

2  Movant's argument that counsel was ineffective because movant was held responsible for

3 losses associated with properties for which she was not convicted fails because, as respondent

4 points out, movant was held accountable for losses associated with properties specifically

5 identified in the superseding indictment.  (Compare ECF No. 123 at 5-7, 10-13 with ECF No.

6 984-2 (summary of loss amounts).)  Further, under U.S.S.G. § 1B1.3, movant was properly held

7 responsible for the Chapter 2 loss calculation for all of her and her co-defendants' relevant

8 conduct:

9
10
11
12
13
14
15
16

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced procured, or willfully caused by the defendant; and (B) in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were -- (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; [and] . . . (3) all harm that resulted from the acts and omissions specified in the section (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions[.]

17 U.S.S.G. § 1B1.3.  The jury convicted movant on every count of wire fraud and mail fraud.  (ECF

18 No. 720.)  Thus, movant's argument is factually and legally unsupported.

19  Moreover, movant's unsupported assertion that defense counsel was ineffective for failing

20 to request a split sentence is unavailing.  The guidelines did not provide an option for a split

21 sentence; rather, movant's guidelines were 168 to 210 months in prison.  (ECF No. 789 at 6, 22,

22 25.)

23  Finally, movant's claim that counsel was ineffective based on the failure of counsel to

24 properly investigate or contest the loss calculations fails on the prejudice prong.  The Ninth

25 Circuit found that the loss amounts were properly calculated and adequately supported by the

26 evidence.  Kuzmenko, 777 F. App'x at 189.  In addition, movant's co-defendants, who were tried

27 separately, challenged the calculation of the same loss amounts on appeal, and the appellate court

28 held "[t]his calculation reflects a reasonable estimate of the natural consequences of Appellants'

1   fraudulent conduct." <u>United States v. Nadia Kuzmenko, et al.</u>, 775 F. App'x 272, 275-76 (9th

2   Cir. 2019), <u>cert. denied sub. nom.</u> <u>Shevtsov v. United States</u>, 140 S. Ct. 2829 (2020), and <u>cert.</u>

3   <u>denied</u>, 140 S. Ct. 2829 (2020), and <u>cert. denied sub nom.</u> <u>New v. United States</u>, 140 S. Ct. 2829

4   (2020).

5          In addition, contrary to movant's allegations, the record confirms defense counsel made

6   many of the arguments movant claims counsel failed to argue here (ECF No. 789-3 at 5, 8; 794 at

7   9-11), as well as on appeal (ECF No. 1130-4 at 6-8, 13-19).

8          Accordingly, movant cannot demonstrate that but for counsel's failure to properly

9   investigate or challenge the loss amount calculation, the outcome would have been different.

10  Movant's sentence was within the Guidelines.  (ECF No. 789 ¶ 25.)  Even if the court subtracted

11  the amount movant contends was incorrectly attributed to her, $4,550,617 from the total

12  $16,719,736 loss amount attributed to her (ECF No. 789 at 10 ¶ 21), the total loss still exceeded

13  $9.5 million and therefore would not alter the outcome.  U.S.S.G. § 2B1.1(b)(1)(K); ECF No. 789

14  ¶ 40.  Thus, movant cannot demonstrate prejudice.

15         **<u>Claim Two</u>**

16         Movant contends defense counsel was ineffective by failing to request an evidentiary

17  hearing on the issues of loss amounts, proof that there were no banks-victims in this case because

18  they did not exist, proof of the number of defrauded banks-victims, or 1098-C or 1098-B forms

19  that made borrowers ultimately liable for the loss, and failing to demonstrate the government

20  incorrectly determined movant benefited the most because co-conspirator Natalia Kislitsa

21  benefited more.  (ECF No. 1070 at 7.)

22         Respondent counters that no evidentiary hearing was required.  The district court applied

23  law from the Ninth Circuit in calculating the loss amount, which was affirmed by the Ninth

24  Circuit on appeal.  Movant received no enhancements for the number of victims in the Guidelines

25  calculations.  Thus, movant cannot demonstrate that trial counsel's conduct was unreasonable or

26  that there is a reasonable probability the outcome would have been different if the court had held

27  an evidentiary hearing.  None of the six defendants who went to trial in this case received an

28  ////

                                              7

evidentiary hearing on loss calculations or the number of victims, and respondent points out that all six defense attorneys were not ineffective.  (ECF No. 1130 at 31.)

Respondent further contends movant's argument that defense counsel was ineffective for not requesting an evidentiary hearing on whether she benefited the most in the scheme fails because the record shows defense counsel objected to the government's assertion that movant profited the most and argued that Shevtsov profited more.  (ECF No. 1130 at 32) (citing ECF Nos. 789-3 at 9; 794 at 3.)  Defense counsel also challenged such assertion in his sentencing memorandum.  (ECF No. 797 at 8-9.)  At sentencing, the district court partly agreed, stating: "I'm going to modify that to read 'Vera Kuzmenko profited significantly.'  It is difficult to tell who profited the most.  I know she did profit significantly."  (ECF No. 1130-2 at 6 (Sentencing RT at 5:6-9.).)  Respondent argues that defense counsel was not ineffective by objecting or in not requesting an evidentiary hearing where the judge agreed to alter the record.  Movant failed to provide facts to support her claim that she did not profit significantly or to rebut the evidence adduced at trial that movant received about $1.9 million from the scheme.  (ECF No. 1130 at 32-33 (listing evidence adduced at trial).)  Further, because defense counsel effectively cross-examined IRS Special Agent Fitzpatrick, as did counsel for co-defendant Siders, respondent argues there was no need for an evidentiary hearing.  (ECF No. 1130 at 33.)  Respondent points out that the total $1,898,626.18 figure does not include the cash and rental payments movant received throughout the scheme.  (ECF No. 1130 at 33) (citing PSR ¶ 100.)  Such total exceeds the $710,000 and $1.1 million movant asserts Kislitsa and Shevtsov received respectively.  (ECF No. 1070 at 7.)

### **Discussion**

The undersigned is persuaded that movant failed to demonstrate defense counsel was ineffective for failing to request an evidentiary hearing.  The record confirms that defense counsel did object, arguing movant did not benefit the most, and the district judge corrected the record at sentencing.  In addition, movant's counsel and counsel for co-defendant Siders challenged the evidence through cross-examination, obviating the need for an evidentiary hearing.  Indeed, no evidentiary hearing was held on loss calculation or the number of victims in any of the co-

defendants' cases.  Further, movant failed to show, with competent evidence, that she did not receive the payments attributed to her at trial, which were supported by testimony and documentary evidence which included checks, escrow, and bank account documents.  Finally, movant did not demonstrate that but for the district court holding an evidentiary hearing on the points raised by movant, the outcome would have changed.  No relief on this claim is warranted.

**Claim Three**

In her third claim, movant contends defense counsel was ineffective because he failed to offer evidence of the state of the mortgage industry so that the jury could evaluate materiality. (ECF No. 1070 at 9.)  Petitioner objects that counsel filed only a continuing objection to exclusion of evidence of lender participation or fault in the charged fraudulent scheme.  Movant contends counsel should have introduced expert testimony as to the state of the mortgage industry, including the different requirements for conventional versus subprime lending programs.  In her traverse, she explained that counsel should have used the expert to explain that subprime loans were referred to as "liar loans," requiring only a credit score and property value to obtain a loan.  (ECF No. 1148 at 8.)  Movant maintains that the industry practice was to over-value properties and provide false documents in loan packages.  (Id.)  She argues the government applied wrong measurements of conventional regulated requirements to subprime loans used in the alleged scheme despite being told by Susan Barringer and Jeremy Caughell, both First Franklin employees, that it was a common practice in subprime loans to add income and assets to borrower's applications.  (ECF Nos. 1070 at 10; 1148 at 8.)  Movant claims the jury was never told of such practice.  (ECF No. 1148 at 8.)

Also, movant contends the government misled the court and the jury by introducing income tax returns to each borrower which were not relevant.  (ECF No. 1070 at 10.)  Counsel failed to object, which resulted in the jury being buried by tax returns showing lack of income which was grossly misleading due to the subprime loan practice.  (ECF No. 1148 at 9.)

Respondent counters that movant's third claim should be denied because defense counsel's notice concerning an expert was reasonable, and movant cannot show a reasonable probability that the outcome would have changed had counsel presented different evidence.  (ECF

No. 1130 at 33.)  Defense counsel did attempt to call an expert to show how securitization of mortgages created an incentive for First Franklin, the primary lender movant used, to engage in fraudulent conduct, arguing that "First Franklin Financial knew of and approved of borrower misrepresentations in loan applications." (ECF No. 1130 at 33, quoting ECF No. 642 at 2.) Defense counsel provided a report of putative expert Shaun P. Martin "knowledgeable about that portion of market in which First Franklin Financial Corporation specialized (e.g., subprime mortgages)." (ECF No. 642 at 3.)  But the trial judge excluded the proposed expert.  (ECF No. 652.)  Further, respondent points out that counsel for co-defendant Anna Kuzmenko did not call a mortgage fraud expert, and counsel for movant's co-defendants attempted to present an expert on "the complicity and motives of the particular victim lenders, not about the general practice of mortgage lenders." (ECF No. 1130, quoting Kuzmenko, 775 F. App'x at 274.)  However, the trial judge excluded the co-defendants' expert as well.

Moreover, respondent argues movant's apparent reliance on a case decided after her trial was completed is unavailing.  (ECF No. 1130 at 35, citing ECF No. 1070 at 10.)  On June 28, 2016, the Ninth Circuit held that false responses to requests for specific information in loan applications are "objectively material for purposes of proving fraud," and found that "the district court properly excluded evidence that the lenders were allegedly negligent or intentional in disregarding Lindsey's fraudulent representations when approving loan applications." United States v. Lindsey, 827 F.3d 865, 871 (9th Cir. 2016), on reh'g, 850 F.3d 1009 (9th Cir. 2017). But on March 8, 2017, the Ninth Circuit amended its opinion, holding that "evidence of individual lender behavior is not admissible to disprove materiality, but evidence of general lending standards in the mortgage industry is admissible to disprove materiality," and "evidence of intentional [dis]regard by lenders is not admissible as a defense to mortgage fraud."  (ECF No. 1130 at 35, quoting Lindsey, 850 F.3d at 1012, 1019.)  Respondent maintains that defense counsel "cannot be held ineffective for not proposing an expert who would have been excluded under previous Ninth Circuit case law and may only have been allowed under case law that occurred well over a year after [movant's] trial."  (ECF No. 1130 at 35.)  Further, respondent contends that movant cannot demonstrate prejudice because the Ninth Circuit held "in light of the

10

1    overwhelming evidence of materiality, any error [in failing to allow such expert testimony] was

2    harmless." <u>Kuzmenko</u>, 777 F. App'x at 188.  Respondent avers that there was extensive evidence

3    of fraud in the

> loan application packages, including lies about income, assets,
> employment, liabilities, and intent to occupy the homes; the number
> of times lenders asked for this information and the supporting
> material they required to substantiate the representations; the
> extensive efforts [taken] to support the false representations; and the
> statements and actions of [movant and her co-defendant].

8    (ECF No. 1130 at 35.)  In light of such evidence, respondent argues the jury would have

9    convicted even if movant's counsel had presented expert testimony concerning the state of the

10   mortgage industry.

11        As to movant's argument concerning the admission of income tax returns, respondent

12   points out that the government did not introduce tax returns for each borrower.  (ECF No. 1130 at

13   36.)  Rather, the government introduced a print-out from an IRS database (Ex. 19D1) for straw

14   buyer Vladimir Shcheglov (Counts 19 & 20), and no tax documents for straw buyer Vitaliy

15   Andreyev.  Second, the tax returns submitted were relevant to show that the loan applications

16   contained lies about the straw buyers' income and were previously admitted at the trial of

17   movant's co-defendants.  Third, case law supported the admission of such records.  (ECF No.

18   1130 at 36, citations omitted.)  Thus, respondent argues, it was not unreasonable for defense

19   counsel not to object to such admission.  But even if defense counsel had objected to the

20   admission of such tax records, movant fails to show the outcome would have been different given

21   that the loan applications and supporting documents were "rife with misrepresentations about

22   straw buyers' primary occupancy, income, occupation, and assets."  (ECF No. 1130 at 36, citing

23   examples.)

24        **<u>Discussion</u>**

25        The undersigned agrees with respondent that petitioner cannot demonstrate <u>Strickland</u>

26   prejudice on claim three.  The Ninth Circuit found that even if the trial court erroneously

27   excluded the putative expert testimony, such error was harmless because:

28   /////

> There was overwhelming evidence that the false statements in the loan applications were material to the lenders' decision-making process.[FN3] As part of their scheme, Defendants made extensive misrepresentations on loan applications regarding, inter alia, income, employment, residence, assets, and liabilities. This information was valuable to lenders as they repeatedly asked for it throughout the application process, requested supporting documentation, and hired underwriters to review loan packages and verify information.
>
> Moreover, a First Franklin employee testified to the importance of certain aspects of the loan application including income, employment, assets, liabilities, and primary residence. And, Defendants, who were both experienced in the real estate industry, believed the false statements were material to the lenders' decision-making process. In light of the overwhelming evidence of materiality, any error was harmless. See Neder v. United States, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999).
>
> [FN3 Materiality is evaluated objectively; the government need not prove actual reliance upon the misrepresentations. Lindsey, 850 F.3d at 1014.

Kuzmenko, 777 F. App'x at 188.[2]  Thus, even if expert testimony had been admitted, the outcome would not have changed given the overwhelming evidence of fraud.  Movant cannot establish prejudice because while it may be conceivable that such an expert could have provided helpful testimony or other admissible evidence, conceivability does not equate to a substantial likelihood of a different result, which is the required showing in a case such as this.  Richter, 562 U.S. at 112.  Even if the expert provided helpful information as to the state of the mortgage industry, there is no prejudice where movant cannot show that the jury would have been persuaded by such information.

Moreover, the tax returns were relevant and admissible.  But even if counsel had objected and the tax returns or records were not admitted, the outcome would not have changed because there were loan applications and supporting documents that contained false statements that were material, as explained by the Ninth Circuit.  Movant is not entitled to relief on claim three.

---

[2]  Movant's co-defendants also appealed the trial court's exclusion of their putative expert witness who intended to testify about the complicity and motives of the particular victim lenders, but the Ninth Circuit found that such preclusion was not error: "While 'evidence of the lending standards generally applied in the mortgage industry' remains relevant on the question of materiality, neither individual victim lender negligence or an individual victim lender's intentional disregard of relevant information are defenses to wire fraud."  Kuzmenko, 775 F. App'x at 274, quoting Lindsey, 850 F.3d at 1015-16.

**Claim Four**

Movant argues defense counsel was ineffective based on "impermissible professional error of not investigating legal discovery documents, failure to detect multiple misidentification similarity and did not challenge government['s] introduc[tion] of false evidence pattern."  (ECF No. 1070 at 11.)  In support, movant argues defense counsel (1) failed to "make applicable investigations of legal discoveries documents," (2) failed to obtain experts experienced in sub-prime lending; (3) failed to analyze winning strategy from other related cases where government failed to prove similar charges and dismissed them for multiple defendants; (4) failed to object to the government's misrepresentation of subprime lending practice; (5) confused the jury and court by admitting tax returns for each borrower as evidence; (6) allowed the government to compare income amount reported on tax return versus income stated on loan application; and (7) failed to develop correct defense strategy on expert opinion and California real estate law.  (ECF No. 1070 at 12.)

Respondent contends movant's arguments in claim four are unduly vague and conclusory and should be denied on that basis alone.  (ECF No. 1130 at 37.)  As argued in connection with claim three, movant's counsel was not ineffective in failing to obtain an expert in subprime lending practices or in not objecting to the admission of tax records.

Movant must make a sufficient factual showing to substantiate her claims.  United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984).  "'Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'"  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  Moreover, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."  United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).  Reasonable tactical decisions, including decisions with regard to the presentation of the case, are "virtually unchallengeable."  Strickland, 466 U.S. at 687-90.

Plaintiff's vague and conclusory arguments are without any factual support and are insufficient to establish movant's entitlement to relief under § 2255.  In particular, movant failed

1    to specify what "legal discovery documents" counsel should have investigated.  She does not cite

2    any "related cases" where a winning strategy was employed.  Movant fails to identify the specific

3    misrepresentations to which defense counsel allegedly failed to object.  Without such specific

4    references, the court is unable to confirm whether or not defense counsel objected.  Indeed,

5    review of the record demonstrates counsel did object.  For example, Vivian Hansen,

6    representative from First Franklin, the lender used for 26 of the property transactions at issue,

7    testified about loan applications and how mortgage loans were obtained, authenticated the loan

8    files and how loans came to First Franklin, and explained the significance of accurate

9    representations on loan applications, supporting documents and other critical representations.

10   Defense counsel did object to portions of Hansen's testimony, and some of the objections were

11   sustained.  RT 238, 240-41, 254, 260-61, 266-67, 269, 272-75, 277-92, 298, 300-01, 305, 309.

12   (ECF No. 891.)   In addition, both defense counsel for movant and her co-defendant Siders cross-

13   examined Hansen.  RT 314-80 (ECF Nos. 891, 892).  Movant fails to demonstrate with specific

14   factual support that there was any "false evidence pattern."

15          Further, defense counsel did seek the expert testimony of Shaun Martin who was

16   "knowledgeable about that portion of market in which First Franklin Financial Corporation

17   specialized (i.e., subprime mortgages)."  (ECF No. 642-2 at 3.)  But the trial judge excluded the

18   expert.[3]  (ECF No. 652 (granting Govt's MIL 6 (ECF No. 586).)  Movant provided no affidavit or

19   evidence from a putative expert indicating the expert would have been willing to testify and

20   describing the expert's testimony.  Thus, movant fails to demonstrate prejudice.  See Grisby v.

21   Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is

22   not enough to establish prejudice."). Movant is not entitled to relief on claim four.

23

24   [3]  Indeed, defense counsel attempted to pursue a lender fault defense and to introduce evidence of
     lender participation or fault in the charged fraudulent scheme, but the trial court excluded the
25   defense and such evidence.  (See ECF No. 642.)  Defense counsel renewed arguments in support
     of such efforts in opposition to the government's motions in limine (ECF Nos. 583, 585, 586 and
26   587), set forth statements by Susan Barringer and other First Franklin employees, and strenuously
     argued First Franklin knew of and approved of borrower misrepresentations in loan applications
27   (ECF No. 642).  That defense counsel was unable to persuade the trial judge to allow such
     defense and admit such evidence does not demonstrate counsel was ineffective.
28

**Claim Five**

Movant claims counsel failed to effectively demonstrate whether the government knowingly and willingly used material, perjured testimony, and used forged documents to secure her conviction.  She alleges counsel was ineffective by allowing the perjured testimony of the following witnesses:[4]  (1) Natalia Kislitsa, (2) Vitaliy Andreyev, (3) Andrey Andreyev, (4) Andrey Kim, (5) Leah Isom, (6) Victor Demchuk, and (7) R. Mitros.  (ECF No. 1070 at 13.)  Movant argues all of these witnesses "have improper interest to testify."  (Id. at 14.)

Respondent contends Kislitsa did not testify at movant's trial, and defense counsel effectively cross-examined the remaining witnesses, discussed in more detail below.  (ECF No. 1130 at 41.)

**Forged Documents**

As argued by respondent, movant failed to identify any document that was forged to secure her conviction.  (ECF No. 1130 at 41.)  Conclusory allegations do not meet the specificity requirement where the "claim was argued in a single page, without reference to the record or any document."  Jones, 66 F.3d at 204 (internal quotation marks and brackets omitted).  Because petitioner failed to refer to a specific document or the record to support her allegation, she is not entitled to relief on such claim.

**Natalia Kislitsa**

Natalia Kislitsa did not testify at movant's trial.  (ECF No. 891-902 (RT Vols. 2-16).)  Movant concedes that Kislitsa did not testify but claims that Kislitsa's "perjured testimony caused harm in other related cases" and allegedly proves "government's willingness to allow perjured testimony to secure convictions."  (ECF No. 1070 at 15.)  Such vague and conclusory statements are insufficient to demonstrate defense counsel was ineffective in connection with an individual who did not testify against movant.[5]

---

[4]  Movant adds that "ineffective counsel failed to objectively demonstrate the impartiality of members of the prosecution team."  (ECF No. 1070 at 14.)  But such allegation is unsupported by facts or evidence showing a potential conflict of interest or bias on the part of the prosecutors and thus cannot support an ineffective assistance of counsel claim.

[5]  Respondent noted that Kislitsa did testify at the trial of movant's co-defendants.  (ECF No. 1130 at 42.)  But on appeal, the Ninth Circuit stated:

1

**Vitaliy Andreyev**

2      Movant contends that Vitaliy Andreyev (hereafter "Vitaliy") was "put above the law"

3   despite receiving $160,000.00.  (ECF No. 1070 at 14.)  Respondent argues defense counsel

4   effectively cross-examined Vitaliy by getting Vitaliy to concede he lied on loan applications,

5   repeatedly lied to the FBI, and did not know who had prepared his loan applications, as well as to

6   concede that despite facing 20 years in prison, he had cut a deal with the government and agreed

7   to cooperate.  (ECF No. 1130 at 42, citing RT 1192-1224.)

8      The government elicited testimony from Vitaliy confirming he was testifying pursuant to

9   a cooperation agreement and was hoping to get a reduced sentence in part by testifying.  RT

10  1177-78.  The record shows that defense counsel effectively cross-examined Vitaliy to impeach

11  his credibility based on his lies and his agreement to cooperate with the government.  RT 1193-

12  1224 (ECF No. 895 at 94-125).

13

**Andrey Andreyev**

14      Next, movant also contends Andrey Andreyev (hereafter "Andreyev") was "put above the

15  law" despite receiving $160,000.00.  (ECF No. 1070 at 14.)  Movant argues Andreyev lied when

16  he testified that he paid movant back from the alleged fraudulent proceeds, claiming he withdrew

17  cash in increments of $10,000.00 to avoid IRS reporting.  (ECF No. 1070 at 14.)  Movant

18  contends defense counsel was ineffective for failing to investigate Andreyev's bank records

19  which would have shown no such withdrawals.  In addition, movant contends Andreyev used the

20  fraudulent proceeds for a down payment on his wife's home purchased a few months later.

21  Movant claims Andreyev was used as a witness in exchange for no prison time.  (Id.)  Movant

22  _____

23          Appellants likewise have failed to demonstrate that the testimony of
           a government witness was actually false.  Witness credibility,
24          including whether the witness "lied, or erred in their perceptions or
           recollections" generally represent questions properly left to the jury.
25          United States v. Zuno-Arce, 44 F.3d 1420, 1422 (9th Cir. 1995).
           Additionally, it remains unlikely that the testimony could have
26          affected the judgment of the jury because the witness was adequately
           cross-examined by the defense on the allegedly perjurious aspects of
27          her testimony.

28  Kuzmenko, 775 F. App'x at 275.

1    also claims that in 2011, Andreyev provided a statement to an investigating IRS agent that

2    Andreyev was in the construction business making up to $80,000.00 a month in cash, which was

3    never reported to the IRS.  (Id.)  She claims Andreyev was never charged with tax evasion, but

4    instead was used as a witness in exchange for no prison time.

5         Respondent responds that defense counsel effectively cross-examined Andreyev.  (ECF

6    No. 1130 at 42, citing RT 1340-81.)  Respondent recounted all of Andreyev's conflicting

7    testimony elicited by defense counsel's cross-examination, including Andreyev's inability to

8    recall certain incidents, that he had "no idea" who prepared his loan application, that he

9    repeatedly lied to the FBI, that he was motivated to protect his wife and his brother, and did not

10   raise cash payments from Vitaliy's account when Andreyev wore a wire to talk with movant.

11   (ECF No. 1130 at 42-43.)  Respondent pointed out that defense counsel questioned Andreyev

12   about the deal offered by the government where Andreyev would plead only to one charge and

13   the remaining counts would be dismissed and the government could recommend a sentence

14   reduction of up to fifty percent.  (ECF No. 1130 at 43, citing RT 1373-74, 1376, 1381.)  On cross-

15   examination, defense counsel elicited the following from Andreyev:  he was testifying in order to

16   get that reduction; it was the prosecution team who would recommend Andreyev's sentence and

17   Andreyev would have to satisfy them; and he was trying to help himself, his wife and brother by

18   testifying and was never asked to pay back any of the $150,000 he received.  (Id., citing RT 1374,

19   1376, 1380-81.)

20        The record confirms that defense counsel extensively cross-examined Andreyev,

21   impeaching his credibility both as to his testimony and as to his motives in testifying.  RT 1340-

22   81 (ECF No. 896 at 93-134).  Moreover, contrary to movant's claim that Andreyev received no

23   prison time in exchange for his testimony, the government did not seek no prison time, but rather,

24   argued that Andreyev had a total offense level of 16 (despite Probation's calculation of 14) and

25   argued Andreyev should receive only a fifty percent downward departure for substantial

26   assistance, consistent with the plea agreement used by defense counsel to impeach Andreyev.[6]

27

28   [6]  Respondent states it was the trial judge who decided that almost all of the straw buyers,
     including those who went to trial, should receive time-served sentences.  (ECF No. 1130 at 43-44,

17

See <u>United States v. Andrey Andreyev</u>, No. 2:12-cr-0069 JAM (E.D. Cal.) (ECF No. 54). As for movant's claim that defense counsel failed to obtain bank records to substantiate Andreyev withdrawing money in increments less than $10,000.00, defense counsel questioned Andreyev about the money laundering charge (RT 1219), and Andreyev's corporate bank records showed such withdrawals as set forth in his indictment for such money laundering.   <u>Andreyey</u>, No. 2:12-cr-0069 JAM (ECF No. 1.)

**<u>Andrey Kim</u>**

Movant argues Andrey Kim (hereafter "Kim") lied on the witness stand, testifying Kim taught movant "to create fake bank statements at [movant's] residence on Pinehurst Dr." (ECF No. 1070 at 15.)  Respondent counters that defense counsel effectively cross-examined Kim, probing Kim's statement, asking where movant lived and eliciting from Kim that Kim previously had not testified about going to movant's home.  (ECF No. 1130 at 44, citing RT 1396, 1440.) Defense counsel also elicited testimony that Kim had been charged with fraud in two separate cases, was engaged in fraud in 2007, "stretched the truth to try to protect" himself and lied when first speaking to the FBI, that Kim had engaged in tax fraud, that he had destroyed evidence, that part of his plea agreement was cooperating with the government and that part of the government's recommendation for sentencing would "be based on what [Kim said] here in court," and that Nadia Kuzmenko told Kim to lie to the FBI, and Kim was involved in the faking of bank statements.  (ECF No. 1130 at 44, citing RT 1396-1444.)

The record demonstrates that defense counsel extensively cross-examined Kim, impeaching his credibility both as to his testimony and as to his motives in testifying.  RT 1396-1444 (ECF No. 896 at 149-97).

**<u>Leah Isom</u>**

With regard to Leah Isom, movant provided no specific factual allegations, simply adding Isom to the list of witnesses movant contends had an improper interest to testify.  (ECF No. 1070

---

citing PSR at 2-4; <u>Andreyey</u>, No. 2:12-cr-0069 JAM (ECF Nos. 56, 57.)  The trial judge "appeared to view them as the victims of Kuzmenko and her co-defendants." (ECF No. 1130 at 44.)

1    at 13.)  Respondent points out that defense counsel for both movant and co-defendant Siders

2    effectively cross-examined Isom, "eliciting that Isom was charged with 23 counts of wire fraud,

3    four counts of mail fraud, pled guilty because she was guilty, defrauded banks, took the

4    government's deal, and was testifying because she hoped not to serve 20 years in jail, and

5    withheld information from her boss's boss, among many other things."  (ECF No. 1130 at 44,

6    citing RT 2072-2161.)  The record confirms both defense counsel extensively cross-examined

7    Isom, impeaching her credibility both as to her testimony and as to her motives in testifying.  RT

8    2072-2161 (ECF No. 900 at 74-163).

9                              **<u>Victor Demchuk</u>**

10        Turning to Victor Demchuk, the broker, movant argues Demchuk was involved in the

11   same scheme as co-defendant Aaron New, but in exchange for no indictment, Demchuk provided

12   perjured testimony about movant's involvement in loans, while Demchuk was collecting final

13   loan documents and commission checks from the title company.  (ECF No. 1070 at 15.)

14   Demchuk personally examined each loan and real estate file before cutting checks to his

15   employee.  (<u>Id.</u>)

16        Respondent counters that defense counsel also cross-examined Demchuk who admitted he

17   was responsible for every loan file submitted under his license; Demchuk wanted to make money

18   from his agents' transactions; if Demchuk had seen something amiss with a loan he would have

19   stopped the agent from submitting it; Demchuk reviewed movant's files and cashed commission

20   checks for those files; Demchuk did not report movant or return a commission check; and

21   Demchuk did not see anything wrong with movant's files during Demchuk's "personal review,"

22   including those files where he was listed as the interviewer.  (ECF No. 1130 at 44-45, citing RT

23   906-57.)  Respondent argues that defense counsel's strategy was to show there was nothing

24   obviously wrong with the loan applications, and both movant and Demchuk financially benefitted

25   from the loans.  (<u>Id.</u> at 45.)  Respondent points out that on cross-examination, defense counsel

26   elicited from Demchuk the same information movant included:  "In reality, [Demchuk] was

27   collecting final loan documents and commission checks directly from the Title Co., and he

28   personally inspected and examined each loan and RE file before cutting checks to his employee."

1    Compare ECF No. 1070 at 15 to RT 940-41, 906-57.  Respondent argues movant "is just making

2    baseless accusations regarding exchanges of 'no indictment' for perjured testimony."  (ECF No.

3    1130 at 35.)

4           The record shows defense counsel cross-examined Demchuk and elicited the very

5    information movant cites as counsel's ineffectiveness.  RT 940-41.  (ECF No. 907 at 41-42.)

6    Defense counsel elicited Demchuk's testimony that he personally reviewed movant's files but

7    "didn't find anything wrong."  RT 945.  (ECF No. 907 at 46.)  On recross, defense counsel

8    elicited Demchuk's confirmation that when the real estate market went down, he wasn't making

9    sales, the commission split with Nadia and movant was very small, and he had large office

10   expenses, so he decided to go to an insurance business and thus there were a number of reasons

11   he let his agents, including movant, go.  RT at 957.  (ECF No. 907 at 58.)  Defense counsel also

12   impeached Demchuk as to his prior statements.

13                          **Roman Mitros**

14          Finally, movant alleges that Roman Mitros first honestly testified that he personally

15   handled his own transaction, prepared the loan application for his client, and paid his buyer $70k,

16   but after the trial judge warned Mitros that he could charge Mitros for such conduct, the

17   government requested a break.  (ECF No. 1070 at 14.)  Movant alleges that during the break the

18   government told Mitros that he only had two options:  recant his statement and blame everything

19   on movant, or he would be arrested on the spot.  (Id.)  Movant claims this is a fact that became

20   known in the community because Mitros told many of his friends.  (Id.)

21           Respondent objects that movant's statement is false and based on nothing more than

22   rumor.  (ECF No. 1130 at 45.)  Mitros first testified in the trial of movant's co-defendants, during

23   which the trial judge interrupted Mitros' testimony, warned him that "[p]erjury is also a crime as

24   well," and advised Mitros to speak with his lawyer.  United States v. Nadia Kuzmenko, et al.,

25   RT 969 at 69-70.[7]  (ECF No. 1130-5 at 16-17.)  Mitros spoke with his lawyer, who requested

26

27   _____

     [7]  Respondent provided excerpts from relevant testimony at the trial of movant's co-defendants,
     Nadia Kuzmenko, Edward Shevtsov, and Aaron New.  (ECF No. 1130-5 at 1-33 (Ex. 6).)  Mitros'
28   complete testimony can be found at ECF No. 483 at 36-49; 62-65; & 69-104.

immunity for Mitros' testimony and proffered Mitros would testify differently.  Id. (RT 983-86.)[8]
Later, Mitros asserted his Fifth Amendment right against self-incrimination, but the trial judge
compelled Mitros to testify.  Id. (RT 985.)  Because such testimony was on the record during the
trial of movant's co-defendants, id. (RT 983-86), respondent argues movant's contention that the
government wanted Mitros to blame everything on movant makes no sense.  (ECF No. 1130 at
45.)

Moreover, respondent argues that during movant's trial, defense counsel effectively cross-
examined Mitros by drawing out Mitros' biases.  (ECF No. 1130 at 45-46, citing RT 1254-82.)
Specifically, defense counsel elicited that Mitros had concerns about one of the transactions he
was involved in, had not been truthful with the FBI and was concerned about it, that movant had
not told him to lie to the FBI, that he had lied to protect himself, did not think movant was the real
estate agent for the sale of Mitros' property, that Mitros may have borrowed money from movant,
that he had a falling out with movant over what was possibly a fraudulent CPA letter that Mitros
wanted movant's business to generate but she refused, that Mitros brought loan paperwork to one
of the straw buyers in the scheme and received a $14,000 referral fee for that straw buyer (Nadia
Kuzmenko), and that Mitros had an obligation not to deceive the straw buyer about the
transaction but that he did not take that obligation very seriously.  (ECF No. 1130 at 44-45, citing
RT 1254-82.)

The undersigned finds that the record rebuts movant's unsupported allegations concerning
the involvement of the government during the break in Mitros' testimony.  It was the trial judge
who insisted that Mitros speak with his lawyer who sought immunity for Mitros.  While the
record confirms that Mitros was granted immunity, movant's defense counsel extensively cross-
examined Mitros and impeached Mitros based on his biases and conflicting testimony.

### **Jury Instructions**

Finally, the record confirms that the trial judge took steps to mitigate any prejudice to
movant by specifically cautioning the jury how to evaluate testimony given in exchange for

---

[8]  Mitros was granted immunity on January 21, 2015.  (ECF No. 387.)

government promises.  The trial judge instructed the jury on its duty to weigh and to evaluate all

the evidence.  RT 2594.  (ECF No. 903 at 147.)  The trial judge explained what the jury could

consider in evaluating the testimony of each witness:

> One, the witness's opportunity and ability to see or hear or know the things testified to.  (¶) Two, the witness's memory. (¶) Three, the witness's manner while testifying. (¶)  Four, the witness's interest in the outcome of the case, if any.  (¶)  Five, the witness's bias or prejudice, if any.  (¶)  Six, whether other evidence contradicted the witness's testimony.  (¶)  Seven, the reasonableness of the witness's testimony in light of all the evidence. (¶) Eight, whether the witness admitted to being untruthful.  (¶)  Nine, whether the witness was promised immunity or leniency in exchange for his or her testimony. (¶)  And ten, any other factors that bear on believability.

RT 1597-98.  (ECF No. 903 at 150-51.)  Moreover, the trial judge specifically warned the jury

about the witnesses who had been granted immunity:

> Immunized witnesses.  You've heard testimony from Mark Bondaruk, Aleksey Trukhan, Roman Mitros, Lisa Kosmak, and Lorena Longo, also known as Nina Barbosa, all witnesses who received immunity. Their testimony was given in exchange for a promise by the government that their testimony will not be used in any case against them.
>
> For this reason, in evaluating the testimony of these witnesses, you should consider the extent to which or whether their testimony may have been influenced by this factor. In addition, you should examine the testimony of these witnesses with greater caution than that of other witnesses.

RT 2598.  (ECF No. 903 at 151.)  Further, the trial judge cautioned the jury as to witnesses who

pleaded guilty:

> You have heard testimony from Zhora Darmoyan, Martin Atoyan, Marat Galoyan, Sergiy Blizenko, Vanik Atoyan, Andrey Andreyev, Vitaliy Andreyev, Gennadiy Yurkevich, Pavel Udalov, and Leah Isom, witnesses who pleaded guilty to a crime or crimes arising out of the same events for which the defendants are on trial and who testified pursuant to a cooperation agreement. These guilty pleas are not evidence against the defendants, and you may consider them only in determining each witness's believability.
>
> For this reason, in evaluating the testimony of these witnesses, you should consider the extent to which or whether their testimony may have been influenced by this factor. In addition, you should examine the testimony of these witnesses with greater caution than that of other witnesses.

1    RT 2598-99.  (ECF No. 903 at 152-52.)  Finally, the trial judge cautioned the jury:

2              You've also heard testimony from Andrey Kim, a witness who
               pleaded guilty to crimes arising out of events other than those for
3              which the defendants are on trial, and who testified pursuant to a
               cooperation agreement. This guilty plea is not evidence against the
4              defendants, and you may consider it only in determining this
               witness's believability.
5
               For this reason, in evaluating the testimony of Andrey Kim, you
6              should consider the extent to which or whether his testimony may
               have been influenced by this factor. In addition, you should examine
7              the testimony of Andrey Kim with greater caution than that of other
               witnesses.
8
9    RT 2599.  (ECF No. 903 at 152.)

10         It is presumed the jurors followed such instructions, and that the specific cautionary

11   instructions mitigated any prejudice.  See Francis v. Franklin, 105 S. Ct. 1965, 1976 n.9 (1985)

12   (the Supreme Court "presumes that jurors, conscious of the gravity of their task, attend closely the

13   particular language of the trial court's instructions in a criminal case and strive to understand,

14   make sense of, and follow the instructions given them").  "Jurors are presumed to follow the

15   court's instructions."  See United States v. Reyes, 660 F.3d 454, 468 (9th Cir. 2011); Doe v.

16   Busby, 661 F.3d 1001, 1017-18 (9th Cir. 2011) (same).

17         Movant bears a heavy burden of proving that counsel's assistance was neither reasonable

18   nor the result of sound trial strategy.  Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001).

19   Contrary to movant's claim that defense counsel "allowed" perjured testimony to be given, the

20   record shows that defense counsel cross-examined the above witnesses in connection with the

21   government's promises.  Defense counsel's cross-examination of the above witnesses and the

22   impeachment of their credibility placed defense counsel's performance well within the wide

23   range of professional assistance demanded of criminal attorneys and is entitled to deference.

24   Strickland, 466 U.S. at 690.  Further, even if there were some deficiency, movant cannot establish

25   prejudice.  There is no reasonable probability of a different outcome because the evidence of

26   movant's guilt was significant.  Id. at 694.

27   ////

28   ////

1

**Claim Six**

2      Movant contends she suffered ineffective assistance of counsel because defense counsel

3 failed to argue the alleged crime did not meet the elements of existing banking law statutes and

4 that the government wrongfully identified movant as a loan originator.  However, movant was not

5 found guilty of violating a banking law statute; rather she was found guilty of wire fraud, mail

6 fraud, money laundering, and witness tampering.  Moreover, whether or not movant was

7 identified as a loan originator is of no consequence here because being a loan originator was not

8 one of the elements of the crimes charged.  Similarly, movant's claim that defense counsel failed

9 to object to movant being identified as a "conditionally licensed realtor" (ECF No. 1148 at 3-4) is

10 unavailing for the same reason.  Failure to raise a meritless argument does not constitute

11 ineffective assistance of counsel.  Cooper v. Fitzharris, 551 F.2d 1162, 1166 (9th Cir. 1977), on

12 reh'g, 586 F.2d 1325 (9th Cir. 1978).  Further, because movant was not charged with violation of

13 a banking statute and none of the elements of the mail fraud, wire fraud and money laundering

14 charges included an element requiring she be a loan originator or a real estate agent, movant

15 cannot demonstrate the outcome of this case would have been different had defense counsel made

16 the arguments proposed in claim six.  Movant is not entitled to relief on claim six.

17

**Claim Seven**

18      Next movant contends counsel was ineffective by failing to demonstrate movant's minor

19 role in the crime, failing to object to the government's theory that movant had a larger role, and

20 not raising the issue of reasonableness in sentencing.  (ECF Nos. 1070 at 18; 1148 at 9.)

21 However, the record confirms defense counsel did object to the recommended enhancement for

22 movant being a leader and organizer of this mortgage loan scheme.  (ECF No. 794 at 11-12.)

23 Also, in objections to the initial presentence report, counsel argued the government did not prove

24 movant was the "driving force" in this scheme.  (ECF No. 789-3 at 3.)  Counsel argued that

25 because movant held title to no real estate and her debts exceeded her assets, she could not be

26 identified as profiting the most.  (ECF No. 789-3 at 3-4, 6.)  Counsel also argued movant was not

27 a recruiter, leader, or organizer, did not play a unique or superior role, that there was no evidence

28 she taught another identified person, and that ranking the perpetrators was not appropriate.  (ECF

24

No. 789-3 at 6, 7, 9.)

In addition, not only did defense counsel argue the unreasonableness of the 210-month sentence, but defense counsel submitted a ten-page sentencing memorandum in which he argued that sentencing movant to the 168-210 guideline range was not reasonable.  (ECF No. 797.)  At sentencing, defense counsel strenuously argued that movant deserved a lesser sentence.  (ECF No. 917 at 19-32.)  Ultimately, although the government sought a high-end sentence, the district court sentenced movant to 168 months, the low-end of the guidelines range.  (ECF No. 917 at 38.)  That movant was sentenced to 42 months less than the government sought demonstrates the effectiveness of defense counsel, not his ineffectiveness.  Movant is not entitled to relief on claim seven.

### Claim Eight

Movant argues defense counsel was ineffective for failing to argue that all 23 counts of mail fraud were in the course of one continuing action with First Franklin.  However, as pointed out by respondent, movant was properly charged and convicted of 23 counts of wire fraud under 18 U.S.C. § 1343, not mail fraud.  (PSR at 1 (ECF No. 789); ECF No. 720 (verdict); RT 2635-38.)  The jury also convicted movant on counts 24, 25 and 26, violations of the mail fraud statute under 18 U.S.C. § 1341.  (PSR at 1; ECF No. 72 (verdict); RT 2635-38.)

But even assuming movant was challenging the 23 counts of wire fraud, the claim fails because the Ninth Circuit holds that each wire use constitutes a separate violation of the wire fraud statute and can be a separate count against a defendant.  United States v. Garlick, 240 F.3d 789, 794 (9th Cir. 2001).  Thus, defense counsel's failure to challenge the 23 counts as one continuing act involving only one victim, First Franklin, was not ineffective because such counts are based on each separate violation, not on the victim or victims.  Thus, defense counsel could not be ineffective for failing to raise a meritless argument.

### Claim Nine

In her ninth claim, movant argues defense counsel was ineffective because counsel did not demonstrate the government failed to establish that First Franklin was an FDIC insured victim.  As argued by respondent, claim nine lacks a legal basis because none of the elements of the

1   crimes charged and for which movant was convicted -- wire fraud, mail fraud, money laundering,

2   and witness tampering -- required the government to prove that the FDIC insured First Franklin.

3   See 18 U.S.C. §§ 1343, 1341, 1956(a)(1)(B)(i), and 1512(b)(3); RT 2602–11 (jury instructions).

4   Because the government was not required to prove First Franklin was FDIC insured, defense

5   counsel could not be ineffective based on a failure to make such a meritless argument.  This claim

6   should be denied.

7        **Claim Ten**

8        Movant contends defense counsel was ineffective for not objecting to the money

9   laundering charges.  (ECF No. 1070 at 21.)  However, not only did counsel object, but the record

10  reflects defense counsel effectively argued against the money laundering charges because the jury

11  acquitted movant on two of the money laundering counts.  Moreover, movant's objection that the

12  $120,000 was paid to movant by her brother, Peter Kuzmenko, to repay a loan is unavailing.  The

13  purpose of the funds being paid does not alter the source of the funds.  Contrary to movant's

14  argument, defense counsel did argue what movant alleges counsel failed to argue -- that there was

15  no way to know the money was from Ardis Construction, and therefore movant could not have

16  known the source of the money.  Compare RT 2501-02 (ECF No. 903) to ECF No. 1070 at 21

17  (motion).  Further, that defense counsel chose not to argue that the $120,000 was repayment for a

18  loan and introduce checks in support of such argument constitutes a tactical decision.  "Mere

19  criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate

20  representation."  Gustave v. United States, 627 F.2d 901, 904 (9th Cir. 1980).  Movant confirms

21  she provided defense counsel with proof of the agreement between movant and her brother, Peter,

22  as well as copies of cancelled checks.  (ECF No. 1070 at 21.)  Defense counsel's tactical decision

23  not to introduce such evidence does not constitute ineffective assistance.[9]

24  _____

25  [9] Peter Kuzmenko did not raise this defense at his own trial.  Rather, counsel for Peter argued that
    checks from the Ardis Construction account came from Vera Kuzmenko.  Nadia Kuzmenko RT

26  2718 (ECF No. 783).  Peter's counsel argued Vera Kuzmenko was "controlling Ardis, she's
    controlling Voyager, she is controlling virtually everything that's going on."  (Id.).  "And she

27  does it in such a way that throws everybody else under the bus.  She doesn't do things directly.
    She is protecting herself and throwing everybody else under the bus."  (Id.)  Peter's counsel

28  argued it was Vera Kuzmenko and Sergey Blizenko who were "in cahoots on Ardis."  Nadia

1       Moreover, defense counsel cross-examined Special Agent Fitzpatrick about the facts

2  underlying the money laundering charges.  RT 2363-65.  (ECF No. 902.)  Defense counsel

3  elicited Agent Fitzpatrick's testimony that there was no printing or other labeling on the checks to

4  show that the money came from the Ardis Construction bank account.  RT 2364.  In closing,

5  defense counsel argued that movant did not know the source of the funds, that the source was not

6  visible on the check, that she could not tell the source of the other checks and would not have

7  known about the other checks.  RT 2501-02.  Thus, as argued by respondent, defense counsel had

8  a defense theory, and he argued it to the jury, convincing them to acquit movant on two of the

9  three money laundering charges.  That movant was not acquitted on all three money laundering

10  charges does not demonstrate that defense counsel was ineffective.

11       Finally, movant presents no competent evidence demonstrating that had defense counsel

12  made the arguments proposed by movant, she would have been acquitted of the third money

13  laundering charge.  Strickland, 466 U.S. at 693-34.  Indeed, as argued by respondent, the money

14  laundering statute does not preclude payments for monies owed.  18 U.S.C. § 1956; RT 2609

15  (ECF No. 903) (jury instruction).  Movant fails to show how the proposed evidence would have

16  rebutted the government's evidence concerning the source of the funds or that petitioner received

17  the funds.  Petitioner is not entitled to relief on claim ten.

18       **Putative Claim Eleven & Subsequent Arguments**

19       In her October 7, 2021 reply to respondent's opposition, movant attempts to add a new

20  claim:  defense counsel failed at sentencing to request a Smith variance based on movant's claim

21  that she is a non-citizen.  (ECF No. 1148 at 12-14) (citing United States v. Thomas, No. 19-3015

22  (2021); Tzen v. United States, 2017 U.S. Dist. LEXIS 155301 (2017).).  Movant also includes

23  new arguments that were not included in her motion, for example, arguments concerning the

24  Pinehurst and Carmello Oak properties.  (ECF No. 1148 at 5-7.)

25       After movant filed her reply, she submitted additional filings.  On October 18, 2021, she

26  filed a document entitled "Supplemental Authority," in which she requests that the court consider

27

28  _____

Kuzmenko RT at 2727 (ECF No. 783).

1    United States v. Simmons, 11 F.4th 239, 248 (4th Cir. 2001). (ECF No. 1149.) She claims

2    Simmons supports the argument that a prisoner's sentence should be based on the elements of the

3    crime of conviction, not the specific characteristics of the defendant's behavior, and that it

4    violated movant's right to competent representation when defense counsel failed to make such

5    argument at sentencing. (ECF No. 1149.)

6        On December 14, 2022, movant asked the court to consider United States v. Banks, 55

7    F.4th 246 (3rd Cir. 2022). (ECF No. 1188.) Movant argues as follows:

8            Banks supports the argument that the district court erroneously
             applied the estimated loss amount enhancement when the victims
9            suffered $0 in actual losses. Because the United States Sentencing
             Commission has interpreted "loss" in its commentary to Guidelines
10           of § 2B1.1, the court accorded the commentary no weight. Applying
             the ordinary meaning of "loss in the context of 2B1.1, the court
11           concluded includes only actual loss.

12   (ECF No. 1188 at 1.) Movant claims she preserved this issue by reserving her right in ground 11

13   to supplement her motion with additional arguments. (Id.)

14       On November 17, 2023, movant filed another notice of supplemental authority, asking the

15   court to consider Kisor v. Wilkie, 139 S. Ct. 2400 (2019) and United States v. Kirilyuk, 2022 WL

16   993574 (9th Cir. 2022). (ECF No. 1200.) Movant contends both of these cases support her

17   argument that the ordinary meaning of "loss" in the context of 2B1.1 includes only actual loss.

18   (ECF No. 1200.) Movant reiterates that she preserved her right to supplement her motion with

19   additional arguments in Ground 11 of her initial motion. (Id.)

20       **Discussion**

21       The Court exercises its discretion to decline to consider movant's putative new claim

22   eleven, new arguments and subsequently filed authorities and arguments. See Cacoperdo v.

23   Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise

24   additional grounds for relief."); see also, e.g., Lopez v. Dexter, 375 F. App'x 724 (9th Cir. 2010)

25   (finding district court appropriately rejected movant's claim on the basis that it improperly

26   surfaced for the first time in his traverse to the state's answer); see also United States ex rel. Giles

27   v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to

28   introduce new facts or different legal arguments in the reply brief than those presented in the

1   moving papers.").

2   **<u>Evidentiary Hearing</u>**

3        The Court has carefully reviewed the record and concludes no evidentiary hearing is

4   required in this action.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) ("if the record refutes the

5   applicant's factual allegations or otherwise precludes habeas relief, a district court is not required

6   to hold an evidentiary hearing").  It is also clear that the pertinent facts of the case are fully

7   developed in the record before the court.  <u>Id.</u> at 475 ("the District Court was well within its

8   discretion to determine that, even with the benefit of an evidentiary hearing, [habeas petitioner]

9   could not develop a factual record that would entitle him to habeas relief").

10       **<u>Conclusion</u>**

11       For the reasons set forth above, IT IS HEREBY RECOMMENDED as follows:

12       1.  Movant's motion to vacate, set aside, or correct her sentence (ECF No. 1070) pursuant

13  to 28 U.S.C. § 2255 be denied; and

14       2.  The Clerk of the Court be directed to close the companion civil case No. 2:21-cv-0200

15  DAD DB.

16       These findings and recommendations are submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections,

21  he shall also address whether a certificate of appealability should issue and, if so, why, and as to

22  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

23  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

24  § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

25  service of the objections.

26  ////

27  ////

28

29

1        The parties are advised that failure to file objections within the specified time may waive

2    the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    Dated:  May 14, 2024

4

5                                                                    _____

6                                                                    DEBORAH BARNES
     kuzm0210.257                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28